# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Madjid Berd, et. al., | ) |
| | ) |
| Plaintiffs, | ) **ORDER DENYING DEFENDANT** |
| | ) **PAUL DE BASTOS' MOTION** |
| vs. | ) **TO DISMISS COMPLAINT** |
| | ) **FOR LACK OF PERSONAL** |
| Paul De Bastos and Paul Real Estate, Inc. | ) **JURISDICTION** |
| | ) |
| Defendants. | ) Case No. 1:16-cv-339 |

Before the Court is "Defendant Paul DeBastos' Verified Motion to Dismiss and Memorandum of Law" filed on February 3, 2017. See Docket No. 16. For the reasons set forth below, the motion is denied.

## I.  BACKGROUND

The Plaintiffs filed this action in the wake of proceedings filed against North Dakota Developments, LLC ("NDD"), Robert Gavin, Daniel Hogan, and relief Defendants by the United States Securities and Exchange Commission, alleging NDD, Gavin, and Hogan fraudulently raised more than $62 million from investors through the sale of interests in North Dakota man camps. See Case No. 4:15-cv-053 (D.N.D. May 5, 2015). In their complaint, the Plaintiffs allege Paul De Bastos and Paul Real Estate, Inc. ("Paul Real Estate") actively assisted NDD in offering and selling, unregistered, nonexempt, and fraudulent securities from May 2012 to April 2015. See Docket No. 1. Specifically, the Plaintiffs allege claims against De Bastos and Paul Real Estate, by separate counts, for violations of Section 10(b)-5 of the Securities Exchange Act of 1934 (15 U.S.C. § 78(j)) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5) in connection with the offer or sale

1

or NDD securities and for violations of N.D.C.C. § 10-04-17 by offering and selling unregistered securities and selling securities as an unlicensed agent.

In response to the Complaint, De Bastos filed this motion to dismiss for lack of personal jurisdiction on February 3, 2017. See Docket No. 16. The Plaintiffs filed a response in opposition to De Bastos' motion on February 22, 2017. See Docket No. 19. On March 22, 2017, De Bastos filed a reply brief. See Docket No. 26. Upon receiving leave, the Plaintiffs then filed a sur-reply on May 9, 2017. See Docket No. 32. In his motion to dismiss, De Bastos contends he has never had personal contact with the forum state of North Dakota sufficient to impart this Court with jurisdiction over him. De Bastos submits his contact with North Dakota was solely in his capacity as an officer of Paul Real Estate.

## II. LEGAL DISCUSSION

### A. RULE 12(b)(2)

In his memorandum in support of its motion to dismiss, De Bastos contends the Court lacks personal jurisdiction over him and the claims against him should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. To defeat a motion to dismiss for lack of personal jurisdiction, the Plaintiffs need only establish a prima facie showing of personal jurisdiction over De Bastos. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). The Plaintiffs' prima facie showing is analyzed "not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). The party seeking to establish that a court has in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. Epps, 327 F.3d at 647.

This Court may properly exercise personal jurisdiction over a party if a two-step inquiry is satisfied. First, the party must be "amenable to service of process under the appropriate long-arm statute." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Second, the party challenging personal jurisdiction must have engaged in activities which satisfy the minimum contacts requirement of the Due Process Clause. Id. The jurisdiction of North Dakota courts is governed by the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process." Hansen v. Scott, 2002 ND 101, ¶ 16, 645 N.W.2d 223. The Eighth Circuit Court of Appeals has held that when a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the Court must determine whether the exercise of personal jurisdiction comports with due process. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006).

"Due Process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Dever, 380 F.3d at 1073 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). A non-resident defendant's contacts with a forum state, for example, must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." Epps, 327 F.3d at 648. There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum: general jurisdiction and specific jurisdiction. With respect to general personal jurisdiction over a defendant, "a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous and systematic." Id. A state has specific personal jurisdiction over a defendant when

the suit arises out of, or is related to, the defendant's contacts with the forum state. Johnson, 444 F.3d at 956.

The Eighth Circuit has established a five-factor test for measuring minimum contacts for purposes of asserting personal jurisdiction over a defendant:

> (1) the nature and quality of a defendants' contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Dever, 380 F.3d at 1073-74. In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. Northrup King Co. v. Compania Productora Semillas Algoddoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995). However, the Eighth Circuit directs courts to give "significant weight" to the first three factors. Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004). The Eighth Circuit's five-part test essentially "blends" the tests for general and specific jurisdiction. See Northrup King Co., 51 F.3d at 1388.

Under the test outlined above, the Plaintiffs have the burden of proving facts to support personal jurisdiction. Dever, 380 F.3d at 1072. The Plaintiffs need not prove personal jurisdiction by a preponderance of the evidence until a court holds an evidentiary hearing or until trial. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). Absent a hearing, the Court will consider the facts in the light most favorable to the non-moving party and resolve all conflicts in favor of that party. Romak USA, Inc., v. Rich, 383 F.3d at 983-84.

Here, De Bastos contends the Court lacks jurisdiction over him because his only contact with the forum state of North Dakota was in his capacity as an officer of Paul Real Estate. De Bastos alternatively submits the Court lacks jurisdiction over him because he did not transact business with any of the North Dakota limited liability companies named as Plaintiffs in this action.

4

However, applying the five-factor test for minimum contacts to De Bastos, the Court concludes it has personal jurisdiction over De Bastos.

### a) **NATURE AND QUALITY OF CONTACTS**

In examining the nature and quality of the contacts, the primary issue is whether the non-resident defendant has "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." Gould v. P.T. Krakatau Steel, 957 F.2d 573, 576 (8th Cir. 1992). De Bastos' central contention is that the Court lacks jurisdiction over him because he did not personally avail himself to the forum state of North Dakota, but his contact with North Dakota was solely in his capacity as an officer of Paul Real Estate. The Court rejects De Bastos' contention. In 2007, Judge Ralph Erickson addressed an identical issue in *Drayton Grain Processors v. NE Foods*, 3:06-cv-173 (D.N.D. March 30, 2017). In his order denying a motion to dismiss for lack of jurisdiction, Judge Erickson reasoned the "fiduciary shield" or "corporate shield" doctrine does not apply in North Dakota:

> The Supreme Court [ ] has held that the state-created corporate identity does not serve to confer any additional due process protections to corporate employees above and beyond the traditional minimum contacts inquiry. Calder v. Jones, 465 U.S. 783, 790 (1984) ("[Petitioners'] status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum state must be assessed individually") (citations omitted); Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.3 (1984) ("...we today reject the suggestion that employees that act in their official capacity are somehow shielded from suit in their individual capacity."). Because corporate officers do not enjoy any special constitutional jurisdictional immunity, any additional protection stemming from the corporate form must arise out of state law, if at all. Other states in this circuit have addressed whether their respective long-arm statutes provide a jurisdictional shield to corporate officers. Residential Funding Corp. v. Anvil Funding Corp., 2005 U.S. District LEXIS 42279 at *17 (D. Minn. June 3, 2005) (rejecting fiduciary shield doctrine); Cantrell v. Extradition Corp. of America, 789 F. Supp 306, 310 (W.D. Mo. 1992) (rejecting corporate shield doctrine); Crystal Clear Optical, Inc., v. Silver, 531 N.W.2d 535, 539-40 (Neb. 1995) (same); Torchmarck Corp. v. Rice, 945 F. Supp. 172, 176 (E.D. Ark. 1996) (same). But see State ex rel Miller v. Baxter

> Chrysler Plymouth Inc., 456 N.W.2d 371, 377-78 (Iowa 1990) (applying corporate shield doctrine).
>
> North Dakota courts have not heretofore addressed whether the corporate shield doctrine is recognized in this state. However, upon examination of North Dakota's long-arm statute, this Court is convinced that it is not. North Dakota's long-arm statute, Rule 4(b)(2), indicates that the legislature contemplated, and accepted, the notion of exercising personal jurisdiction over individuals acting in an official or corporate capacity. Rule 4(b)(2) expressly provides for jurisdiction over a defendant whose contact with the state is based on "acting as a director, manager, trustee, or officer of a corporation organized under the laws of, or having its principal place of business within, this state." N.D. R. Civ. P. 4(b)(2)(G).

See Docket No. 53, pp. 7-8 (Case No. 3:06-cv-037). The Court remains convinced the corporate shield doctrine is not recognized in North Dakota. Consequently, even if De Bastos' contact with North Dakota was solely in his capacity as an officer of Paul Real Estate, the Court may exercise jurisdiction over him.

> In their Complaint, the Plaintiffs allege De Bastos:
>
> communicated numerous times with North Dakota-located agents of NDD; traveled to North Dakota to meet with NDD in connection with their promotion of NDD securities to investors; obtained and sent promotional documents to NDD and its agents in North Dakota; approached prospective NDD investors and urged them to purchase the North Dakota-issued NDD securities; directed NDD investors to send their investment-related paperwork as well as their investment proceeds to North Dakota agents of NDD; and received outrageously high sales commissions from investor funds wired to North Dakota.

See Docket No. 1, p. 4. Additionally, the Plaintiffs allege this Court has jurisdiction over the Defendants because they

> actively recruited investors to invest in a North Dakota company; brokered the sale of interests in North Dakota real property and of North Dakota-issued securities; received fraudulent offering documents from North Dakota and directed communications to North Dakota, pertaining to their fraudulent sales of NDD securities; received commissions from North Dakota in connection with their sales; directed investor funds and investment-related paperwork to be sent to a North Dakota law firm in connection with the sales; and, acted as a necessary intermediary in connection with a fraud emanating from North Dakota.

See Docket No. 1, p. 5.  Based upon its review of the record, it is also evident De Bastos transacted business with North Dakota entities on numerous occasions.  In fact, the North Dakota Securities Department issues a "Cease and Desist Order, Notice of Civil Penalty, and Notice of Right to Request a Hearing" regarding De Bastos on June 17, 2015.  See Docket No. 32-2.  De Bastos' contact with North Dakota is not random, fortuitous, and attenuated.  The nature and quality of these contacts support the exercise of personal jurisdiction over De Bastos.

        **b)**      **QUANTITY OF CONTACTS**

Quantity is a consideration when general jurisdiction is alleged.  Lakin v. Prudential Sec, Inc., 348 F.3d 704, 712 (8th Cir. 2003).  It is well-established that specific jurisdiction can arise from a single contact with the forum state.  Fulton v. Chicago, Rock Island & P.R. Co., 481 F.2d 326, 334-36 (8th Cir. 1973).  The Plaintiffs presented prima facie evidence in their complaint that De Bastos traveled to North Dakota to facilitate business with NDD.  See Docket No. 1.  Such contact satisfies the single contact needed to give rise to personal jurisdiction over De Bastos.  Moreover, De Bastos' contact with Plaintiffs to facilitate the sale of unregistered, fraudulent NDD securities related North Dakota real estate more than satisfies the quantity of contacts needed to support personal jurisdiction.

        **c)**      **RELATION OF CONTACTS TO CAUSE OF ACTION**

Defendant De Bastos' contact with North Dakota directly relates to this cause of action.  The Plaintiffs allege De Bastos solicited for sale and sold unregistered, fraudulent North Dakota securities, related to North Dakota real estate.  The Plaintiffs further allege:

> 91. Defendants urged Plaintiffs to invest in NDD, based on their false and material misrepresentations and omissions.

> 92. Defendants instructed Plaintiffs that, in order to invest, Plaintiffs must transfer their investment proceeds to North Dakota; send their investment-related paperwork to North Dakota; and communicate with the escrow agent in North Dakota regarding their investments.
>
> 93. Plaintiffs, in reliance upon Defendants' fraudulent misrepresentations and omissions, invested in the unregistered and fraudulent NDD securities, on the dates and in the amounts set forth above in paragraph 20.
>
> 94. Defendants assisted Plaintiffs with the investment-related paperwork and directed such paperwork to be sent to North Dakota.
>
> 95. Defendants also assisted Plaintiffs in transferring their funds to North Dakota and communicated with North Dakota-based NDD agents to facilitate Plaintiffs' investments.
>
> 96. Defendants received substantial sales commissions, believed to be over a million dollars, from North Dakota-based NDD, for their fraudulent and unlicensed sales of unregistered securities to Plaintiffs.

See Docket No. 1, pp. 21-22. These actions form the base of the Plaintiffs' claims against De Bastos and were directed at North Dakota. Consequently, the Court finds it has jurisdiction over De Bastos to adjudicate claims arising out of the sale or solicitation of unregistered, fraudulent North Dakota securities related to real property located in North Dakota.

### d) **INTEREST OF THE FORUM STATE AND CONVENIENCE OF THE PARTIES**

It is well-established in the Eighth Circuit that the first three factors as outlined above are of "primary importance," and the last two factors are of "secondary importance." Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003). The fourth factor is the interest in the forum state in adjudicating the cause of action. The Court finds it is in the interests of North Dakota to adjudicate the sale of unregistered, fraudulent securities tied to real property located in North Dakota. The Plaintiffs' claims relate to the regulation of securities in North Dakota and to the disposition of real property within North Dakota. These specific claims are local in nature. Therefore, the interest of North Dakota in adjudicating these claims is heightened

The fifth factor pertains to the convenience of the parties. The Court finds that, although none of the parties are residents of North Dakota, the State would be a convenient forum for this dispute because the property related to the sale of unregistered, fraudulent securities is located in North Dakota. Moreover, much of the activity related to the sale or solicitation of unregistered, fraudulent securities. Therefore, this factor weighs in favor of exercising personal jurisdiction, but as stated above, the last two factors are of secondary importance. See Stanton, 340 F.3d at 694; Northrup King Co, 51 F.3d at 1388. Based on De Bastos' contacts with North Dakota, and the totality of the circumstances, the Court expressly finds that exercising personal jurisdiction over the Defendant would not violate due process. See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1390 (8th Cir. 1997). The exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. The Plaintiffs have sustained their burden of proof, and established the Court's in personam jurisdiction. The Court finds it possesses personal jurisdiction over De Bastos.

### III. CONCLUSION

The Court has carefully considered the entire record, the parties' briefs, and the relevant case law. For the reasons set forth above, the Court **DENIES** De Bastos' motion to dismiss for lack of personal jurisdiction (Docket No. 16).

**IT IS SO ORDERED.**

Dated this 2nd day of November, 2017.

/s/ Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court