IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Madjid Berd, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING IN PART** |
| | ) | **MOTION TO COMPEL AND ORDER** |
| vs. | ) | **TO ANSWER** |
| | ) | |
| Paul De Bastos and Paul Real | ) | |
| Estate, Inc., | ) | Case No. 1:16-cv-339 |
| | ) | |
| Defendants. | ) | |

## I. BACKGROUND

Plaintiffs filed this action in the wake of proceedings filed against North Dakota Developments, LLC ("NDD"), Robert Gavin, Daniel Hogan, and several "relief defendants" by the United States Securities and Exchange Commission, alleging that NDD, Gavin, and Hogan had fraudulently raised more than $62 million from investors through the sale of interests in North Dakota man camps. See Case No. 4:15-cv-053 (D.N.D. May 5, 2015). In the complaint in this action, plaintiffs allege Paul De Bastos and Paul Real Estate, Inc. ("Paul Real Estate"), acting as NDD's sales agents, actively assisted NDD in offering and selling unregistered, nonexempt, and fraudulent securities from May 2012 to April 2015. Specifically, plaintiffs assert claims against Paul Real Estate and De Bastos, by separate counts, for violations of Section 10(b)-5 of the Securities Exchange Act of 1934 (15 U.S.C. § 78(j)) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5) in connection with the offer or sale of NDD securities and for violations of N.D.C.C. § 10-04-17 by offering and selling unregistered securities and selling securities as an unlicensed agent. De Bastos is president of Paul Real Estate, a Florida corporation and alleged alter ego of De Bastos.

Paul Real Estate did not respond to the complaint and a clerk's entry of default was filed as

1

to it on March 2, 2017. Paul Real Estate subsequently filed for bankruptcy in the Southern District of Florida on or about June 8, 2017. And, on November 27, 2017, De Bastos filed a motion to stay this action in its entirety pending Paul Real Estate's bankruptcy, averring that his assets and those of Paul Real Estate may be intertwined. This motion was denied.

De Bastos responded to the complaint by filing a motion to dismiss for lack of personal jurisdiction. This motion was denied on November 2, 2017. Since that time, if De Bastos has served an answer to the complaint, he has not filed it with the court.

On November 2, 2018, plaintiffs filed a Motion to Compel Discovery pursuant to Fed. R. Civ. P. 37. Plaintiffs seek an order directing De Bastos to produce documents responsive to their first request for production of documents and provide more detailed responses to their first set of interrogatories. Additionally, they seek an order determining that De Bastos's answers and objections to their requests for admissions are insufficient and that the matters either be admitted or that an amended response be served. Plaintiffs have filed copies of their discovery requests, De Bastos's responses to these requests, and their e-mail correspondence with De Bastos as exhibits. De Bastos has not responded to the motion to compel.

## II. DISCUSSION

### A. Governing law

Fed. R. Civ. P. 26(b)(1) addresses the scope of discovery in civil actions and provides as follows:

> **(1) Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Rule 26(a) requires the parties to make certain initial disclosures without a demand having been served by the opposing parties.

Rule 37 of Federal Rules of Civil Procedure sets forth the recourse available to a party if the opposing party fails to fulfill its discovery obligations. Relevant here, it provides that "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P 37(a)(3)(A). It also provides that a party may move to compel a response from a party who fails to properly answer interrogatories or produce requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv).

With respect to requests for admissions, Fed. R. Civ. P. 36(a)(6) provides:

> **(6) Motion Regarding the Sufficiency of an Answer or Objection.** The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served. The court may defer its final decision until a pretrial conference or a specified time before trial. Rule 37(a)(5) applies to an award of expenses.

Finally, a party proceeding *pro se* is not excused from complying with court orders or substantive and procedural law. Farnsworth v. City of Kansas City, Mo., 863 F.2d 33, 34 (8th Cir. 1988); Am. Inmate Paralegal Assoc. v Cline, 859 F.2d 59, 61 (8th Cir. 1988); Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984) (per curiam).

### B. Rule 26(a) Disclosures

De Bastos must comply with the Rule 26(a) disclosure requirements. The fact he is proceeding *pro se* is not an excuse. Consequently, De Bastos shall make his Rule 26(a) disclosures

3

on or before April 19, 2019. Failure to comply may result in sanctions, including assessment of attorney's fees and costs incurred because of the non-disclosure, the exclusion of any evidence favorable to him, the striking of defenses, or even the entry of a default judgment against him. Fed. R. Civ. P. 37(c)(1).

    **C.**    **Plaintiffs' First Request for Production of Documents**

On April 16, 2018, plaintiffs served De Bastos with requests for the production of documents in his possession, custody, or control. (Doc. No. 45-1). On May 31, 2018, De Bastos responded as follows:

> Please note that many of my files and other office materials, including NDD related documents were ruined by Hurricane Irma. This notwithstanding, I have requested that my attorney check his files to see what, if any information he can provide to me that is not "work product" or other privileged materials. He informed me that he will check and provide what he may have, although this may take several weeks.
>
> Such production would likely include "generic" materials which the Plaintiffs may have received. I have nothing specific to any of them. Nor do I have access to certain email accounts any longer. Once I receive the documents from my former attorney, I may be able to ascertain whether any documents may have existed.

(Doc. No. 45-4).

De Bastos's summary response as set forth above is inadequate. Further, there is nothing in the record indicating that he followed through on his promise to provide what documents are subject to his control, including specifically those in the possession of his attorney.

De Bastos shall have until April 19, 2019, to file a proper response to plaintiffs' requests for production of documents. The response must include a separate response for *each* request as required by Fed. R. Civ. P. 34(b)(2)(A). In responding to each request, De Bastos must state either (1) that he has produced with his response the documents sought in the request that are within his possession, custody, or control (including those in the hands of his attorneys) or (2) explain why the

documents sought in the particular request cannot be produced. As for the actual production of the documents, the court concludes in this instance that De Bastos, by not properly responding to plaintiffs' document requests and plaintiffs' motion, has waived any right (1) to object to the production requests based on grounds of lack of relevancy, overbreadth, or vagueness, or (2) to complain about plaintiffs' failure to specify in their request for production of documents a reasonable time, manner, and place for inspection of the same as required Fed. R. Civ. P. 34(b)(1)(B). De Bastos shall at his expense forward to plaintiffs' counsel copies of all responsive documents (either in hard copy or electronically-scanned PDF format) on before April 19, 2019, unless the parties can come to some other agreement.

    **D.**    **Plaintiffs' First Set of Interrogatories**

Plaintiffs takes issue with a number of De Bastos's interrogatory answers on the grounds that they are incomplete, devoid of substance, or otherwise deficient. For the sake of expediency, the court shall list the interrogatory, the response at issue, and its conclusions.[1]

    **1.**    **Interrogatory No. 5**

Q:    Identify each and every individual associated with NDD with whom You communicated regarding the sales of NDD investments.

A:    This request is too broad in that the word "associated" could refer to 100's of people.

De Bastos's objection is specious. He must provide a full and complete supplemental answer on or before April, 19, 2019. Further, this supplemental answer must be sworn to under oath.

    **2.**    **Interrogatory No. 8.**

---

[1] The undersigned has not overlooked the fact that, under the court's local rules at D.N.D. Civ. L. R. 7.1(F), "[a]n adverse party's failure to serve and file a response to a motion may be deemed an admission that the motion is well taken." Even though De Bastos did not respond to the motion to compel, the court in its discretion consider the objections he interposed to the interrogatories.

5

Q: Identify when You sold NDD investments to each of the Plaintiffs, and where you were located when you conducted the sales.

A: As for "when," I cannot recall. As for "where," I believe I was mostly, if not solely in Florida.

The court is not convinced that De Bastos has fully exhausted either his own recollection or what he could determine by reviewing documents that are within his possession, custody, or control. De Bastos shall have until April 19, 2019, to supplement his answer under oath, keeping in mind that a failure to do so may very well have negative consequences later should he attempt to provide more specific information or it becomes clear that the information was available.

### 3. Interrogatory No. 9

Q: Describe in detail the materials You provided Plaintiffs concerning NDD.

A: It is too burdensome to describe in detail the materials. However, I will provide the materials which may have been provided (in generic form) to the Plaintiffs. Again this info must be obtained from my former attorney.

De Bastos's objection to this interrogatory is lacking in merit. Consequently, De Bastos must by April 19, 2019, answer this interrogatory with a detailed description of the sales materials that he provided to plaintiffs about NDD.

### 4. Interrogatory No. 11

Q: Identify the states from where the NDD securities originated?

A: I do not understand that question.

The court agrees with objection. No further response is required.

### 5. Interrogatory No. 12

Q: For all trips where you visited North Dakota, South Dakota, and Montana for the purpose of visiting the NDD properties, describe the specific nature of your visit, identify who you met with, describe your interactions with anyone affiliated with NDD, and identify the dates of any such visits.

A: All trips to North Dakota was to inspect what NDD was doing at the time and to see, in the beginning, what the availability was for housing of oil workers in the area, and the amount of workers and production in general for the oil boom in N.D. I cannot recall the names and information of who I met with; some were associated with NDD and others were simply associated with the state and/or county and/or oil boom in general.

The court suspects that De Bastos can provide more detail, including particularly the dates, by consulting any records he might have as well as giving more thought to the matter. De Bastos shall have until April 19, 2019, to provide a supplemental answer under oath keeping in mind that he may not be allowed later to introduce at trial more specific information if he fails to do so.

### 6. Interrogatory No. 13

Q: Describe the purpose of Your trip to the United States when you visited NDD properties.

A: I don't understand that question.

The court agrees the question is vague under the circumstances and, in any event, unlikely to advance the ball in this matter. No further response is required.

### 7. Interrogatory No. 14

Q: Describe Your arrangement, including financial incentives, to sell NDD investments.

A: I was to introduce potential buyers to NDD. If they purchased one of the housing units, I was paid a commission.

De Bastos shall have until April 19, 2019, to supplement his answer by providing more specifics with respect to the basis upon which he was to be compensated, including any applicable percentages, and the commissions he received.

### 8. Interrogatory No. 15

Q: State the name, address, email address, and telephone number for each person or entity to whom You offered and/or sold NDD investments.

A: The question is overboard, vague and burdensome. This notwithstanding, I don't have the information available any longer.

De Bastos's objections of overbreadth, vagueness, and burdensome are overruled. De Bastos's assertion that he no longer has this information may not jive with his response to plaintiffs' request for production where intimates that he had yet to take stock of documentation in his possession in the wake of Hurricane Irma or in the possession of his attorney. De Basto shall have until April 19, 2019, to supplement his response with names and contact information of those who purchased NDD securities from him to the extent he has responsive information that is in his possession or under this control. On the other hand, if for example, he only has a name and address, he is not obligated to search for or obtain from third party sources a telephone number or email address.

### 9. Interrogatory No. 16

Q: Describe with detail the basis You had for selling the NDD investments to Plaintiffs.

A: I don't understand that question.

The court agrees the question is vague under the circumstances. Also, taking De Bastos's deposition with the ability to ask more targeted and, if necessary, clarifying questions, would be more productive. No further response is required.

### 10. Interrogatory No. 18

Q: Identify the name, address, email address, and telephone numbers of each of the individuals from who you received NDD documents.

A: I do not understand what is meant by "from whom I received NDD documents." The questions seem overbroad.

De Bastos shall have until April 19, 2019, to provide defendants with the contact information of the individuals who provided him with NDD documents that he in turn provided to others to the

extent he has the names and contact information in his possession or in documents that in his possession or are subject to his control.

### E. Plaintiffs' Requests for Admissions and Interrogatory No. 19

Plaintiffs propounded 41 requests for admissions, but, with subparts, the number is closer to 55. Plaintiffs contend that De Bastos's response of "deny" to the bulk of them is insufficient. That contention has no merit. Rule 34 on its face permits a party to "deny" the admission without having to state anything more. See, e.g., Marquette Bus. Credit, Inc. v. Gleason, No. 14-cv-354, 2015 WL 12776599, at *6 (D. Minn. Jan. 30, 2015) (Plaintiff now seeks additional, different information from Gleason in response to these requests. However, the Court cannot compel a "different" answer, simply because Plaintiff is unsatisfied with Gleason's denials. The Court must accept Gleason's representations at face value, as the Court "ha[s] no means to test the veracity of such avowals, other than to appropriately sanction a recalcitrant party for failing to responsibly honor its discovery obligations." Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 168 F.R.D. 641, 643 n.1 (D. Minn. 1996)).

Plaintiffs further contend that De Bastos was required for a couple of the responses to affirmatively state he "made reasonable inquiry and that the information [he] . . . knows or can readily obtain is insufficient to enable it to admit or deny." However, this representation is required by Fed. R Civ. P. 36(a)(4) only when the responding party states he or she lacks sufficient information or knowledge to admit or deny. The only response that comes close is the one made to Request No. 29 seeking an admission that De Bastos assisted all of the named plaintiffs with respect to their investment-related paperwork. De Bastos's response was: "Deny, can't admit I assisted them all because I do not recall." With respect to Request No. 29, De Bastos shall by April 19,

9

2019, provide a supplemental response that either (1) restates his response and adds that in making the response he has made reasonable inquiry with respect to information within his possession or control, or (2) categorically admits or denies the request for admission.

Finally, in coordination with their requests for admissions, plaintiffs propounded Interrogatory No. 19 and De Bastos answered as follows:

> Q: If your response to any of Plaintiff's Requests for Admissions is anything other than an unqualified admission, state all facts supporting your denial.
>
> A: The denials are because they are factually incorrect or the statements presume or imply a legal conclusion.

Plaintiffs contend this answer is insufficient.

At this point, the court will not require De Bastos to "state all facts supporting your denial" with respect to the requests for admission that were not admitted. There are several reasons for this. First, this court is wary of written contention discovery that simply tracks the pleadings in the case, particularly in the initial phases of discovery. See also United States v. Educ. Mgmt. LLC, No. 2:07-CV-00461, 2013 WL 3854458, at *20 (W.D. Pa. May 14, 2013), report and recommendation adopted, 2013 WL 3863963 (W.D. Pa. July 23, 2013); In re Convergent Technologies Securities Litigation, 108 F.R.D. 328, 338 (N.D. Cal.1985). In fact, the court's progression order prohibits the use of broad contention interrogatories as an initial matter—a point plaintiffs have ignored. (Doc. No. 41). And here, Interrogatory No. 19 is simply another form of a contention interrogatory. Second a number of the requests for admissions are either lacking in specificity, are unfairly argumentative, or, in a couple of instances, require facts that De Bastos would not necessarily have. This makes fighting over them unproductive. Third, Interrogatory No. 19, in seeking additional information with respect to the 41 requests for admissions (actually 55 with subparts), exceeds the

number of interrogatories permitted in the court's progression order of 50, particularly when added to the first eighteen interrogatories. McClellan v. Kern Cty. Sheriff's Office, No. 1:10-cv-0386, 2015 WL 4598871, at *7 (E.D. Cal. July 28, 2015) (concluding that each request for admission covered by a single interrogatory asking for all facts to support claimed denials must be counted as separate interrogatory for purposes of the limit on the number of interrogatories); Colony Ins. Co. v. Kuehn, No. 2:10-cv-01943, 2011 WL 4402738, at **10–11 (D. Nev. Sept. 20, 2011) (same).

That being said, the court may allow plaintiffs an opportunity later to request the information sought with respect to some of the requests for admissions after plaintiffs have deposed De Bastos and the court concludes that further elucidation by De Bastos at that point would advance the ball in terms of fairly resolving what is at issue. Further, De Bastos is cautioned that denials made in bad faith may later result in court sanctions pursuant to Fed. R. Civ. P. 37(c)(2).

### III.   ORDER

Plaintiffs' Motion to Compel (Doc. No. 45) is **GRANTED IN PART**. De Bastos shall have until April 19, 2019, to comply with the court's directives as set forth above. Also, De Bastos shall file his answer with the court within 15 days of the date of this order.

**IT IS SO ORDERED.**

Dated this 18th day of March, 2019.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court
